## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARAH MERCADO, | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID W. SUNDAY, Jr., | : | |
| DISTRICT ATTORNEY OF YORK | : | CIVIL ACTION NO. 1:21-cv-01631 |
| COUNTY, in his official capacity | : | |
| only, and JOSH SHAPIRO, | : | |
| ATTORNEY GENERAL OF | : | |
| PENNSYLVANIA, in his official | : | |
| capacity only | : | |
| *Defendants* | : | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

AND NOW, this 7th day of October, 2021, comes Defendant, David W. Sunday, Jr., by and through his attorneys, Summers Nagy Law Offices, and files this Brief in Support of Motion to Dismiss, and in support thereof avers the following:

## I.    BACKGROUND

On or about January, 26, 2021, Defendant Sunday charged Plaintiff for her publication of York County Office of Children, Youth & Families ("CYF") records in violation of 23 Pa. C. S. §6349(b).  The charge came as the result of Plaintiff's posting of CYF records on a Facebook page known as "Justice for Dante," created in response to the death of her nephew, Dante Mullinix.  The charge was ultimately dismissed on September 15, 2021.

On or about September 22, 2021, Plaintiff, Sarah Mercado, filed her Complaint asserting two causes of action under 42 U.S.C. §1983 for alleged violations of the First Amendment to the U.S. Constitution.  Defendant Sunday was served with said Complaint on or about September 23, 2021.  Plaintiff asserts both as-applied and facial challenges to 23 Pa. C. S. §6349(b).

Plaintiff claims that she wishes to continue releasing certain information contained in CYF records pertaining to the death of her nephew and the prosecution of Tyree Bowie for said death.

## II.   QUESTIONS PRESENTED

**A. SHOULD THE COURT DISMISS PLAINTIFF'S CLAIM PRESENTED IN COUNT I OF THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER Fed. R. Civ. P. 12(B)(6)?**

**Suggested Answer:** *In the affirmative.*

**B. SHOULD THE COURT DISMISS PLAINTIFF'S CLAIM PRESENTED IN COUNT II OF THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER Fed. R. Civ. P. 12(B)(6)?**

**Suggested Answer:** *In the affirmative.*

## III.   ARGUMENT

**A. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM PRESENTED IN COUNT I OF THE COMPLAINT BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR AN AS-APPLIED CHALLENGE OF 23 Pa. C. S. §6349(b).**

Fed. R. Civ. P. 12(b)(6) provides grounds for dismissal where a plaintiff has failed to state a claim upon which relief can be granted.  For the purpose of a

Motion to Dismiss pursuant to 12(b)(6), the factual allegations set forth in a

complaint must be accepted as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The question of sufficiency is one of compliance with Fed. R. Civ. P. 8(a)(2), and

"a formulaic recitation of the elements of a cause of action will not do."  Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In relevant part, Fed. R. Civ. P.

8(a)(2) requires "showing that the pleader is entitled to relief."

    "The decision disposing the case is then purely on the legal sufficiency of

plaintiff's case: even were plaintiff to prove all its allegations, he or she would be

unable to prevail."  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891

(3d Cir. 1977).  A "bare legal conclusion" is insufficient to survive such a

challenge. Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 182 (3d

Cir. 1988).  More than thirty years ago, the Court in Zimmerman recognized that

"litigation today is too expensive a process to waste time on fanciful claims."  Id.

That concern has undoubtedly deepened in the intervening years since.

    Count I of Plaintiff's Complaint contains an as-applied First Amendment

challenge to the constitutionality of 23 Pa. C. S. §6349(b).  Specifically, Plaintiff

claims that Defendants' previous use and expected future use of 23 Pa. C. S.

§6349(b) to prosecute the release of information related to the death of Dante

Mullinix violates her "right to free expression by criminalizing her publication of

truthful information concerning the operations of government."  Complaint, ¶39.

23 Pa. C. S. §6349(b)[1] provides:

A person who willfully releases or permits the release of any information contained in the Statewide database or the county agency records required by this chapter to persons or agencies not permitted by this chapter to receive that information commits a misdemeanor of the second degree. Law enforcement officials shall insure the confidentiality and security of information under this chapter. A person, including a law enforcement official, who violates the provisions of this subsection shall, in addition to other civil or criminal penalties provided by law, be denied access to the information provided under this chapter.

In order to determine what level of scrutiny to apply to a restriction on speech, courts must first determine if the restriction is content based or content neutral.  Bruni v. City of Pittsburgh, 941 F.3d 73, 83 (3d Cir. 2019).

## I.      §6349(b) IS A VALID CONTENT NEUTRAL REGULATION OF SPEECH

Initially, a review of the statute to determine whether the regulation of speech is content neutral is appropriate. A law regulating speech is considered content neutral if it applies to all speech irrespective of the ideas or views expressed.  Galena v. Leone, 711 F.Supp.2d 440, 452 (W.D. Pa. 2010), aff'd, 638 F.3d 186 (3d Cir. 2011).  The "principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys."  Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

---

[1] Plaintiff refers to the clause as the "Secrecy Mandate" in her Complaint, which is not an official name, but rather an attempt to editorialize the statute's purpose.

From the clear, unambiguous language of the statute, 23 Pa. C. S. §6349(b) does not draw any distinction based on content, function or purpose of the speech. It is critical, for a content neutral determination, that prohibition against release of information is a prohibition against the release of *any* information.  The content or message of the speech is not the relevant consideration – it is simply whether any information contained in the "Statewide database or the county agency records" has been impermissibly released.

After a facial analysis and determination that the law is content neutral, the Court then inquires as to whether there is a benign purpose to the law.  Free Speech Coal., Inc. v. Attorney Gen. United States, 825 F.3d 149, 160 (3d Cir. 2016).  The government's purpose is the controlling consideration.  Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).  A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.  Id.

Where child-abuse information is at issue, the Court has consistently cited the Commonwealth's compelling interest in protecting its child-abuse information.  Pennsylvania v. Ritchie, 480 U.S. 39, 60 (1987).  As such, the purpose is the protection of the information and, inherently, the protection of the children.[2]

---

[2] Although protecting children is a logical compelling government interest, the information that plaintiff seeks to release would also include privacy information such as social security numbers, dates of birth, addresses, etc.  Moreover, the information

Thus, the purpose of 23 Pa. C. S. §6349(b) is not related to the content of the speech, but is concerned with the target of the speech, specifically children subject to abuse and the protection of their identity and the circumstances relating to reports of abuse.

Finally, where the law is determined to be content-neutral the court must apply intermediate scrutiny and ask whether it is "narrowly tailored to serve a significant governmental interest." Bruni v. City of Pittsburgh, 824 F.3d 353, 363 (3d Cir. 2016). The requirement of narrow tailoring is satisfied "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." Ward v. Rock Against Racism, 491 U.S. 781, 799 (1989), citing United States v. Albertini, 472 U.S. 675, 689 (1985).

Absent the prohibition of the release of information pursuant to 23 Pa. C. S. §6349(b), there is no alternative means to effectively achieve the government's interest in ensuring the confidentiality of child abuse reports. Said differently, if there is no regulation in place, any such reports may be disseminated without repercussion. The most efficient, narrow means of ensuring that child-abuse

_____

that plaintiff seeks to release would include founded and unfounded allegations. Certainly, if these records are disclosed, there would be an obvious chilling effect on child abuse reporting – not to mention the untold harm to alleged perpetrators. Obviously, unfounded claims would have devastating consequences to any individual simply accused of child abuse. Even founded claims are not the same as a criminal conviction. Indeed, the same due process protections are not afforded to alleged child abusers compared to the criminal justice procedures.

information is kept confidential is to enact a regulation preventing its release.

Accordingly, §6349(b) is a valid content neutral regulation of speech.

## II.     §6349(b) IS A VALID CONTENT BASED REGULATION OF SPEECH

Alternatively – should the Court find that §6349(b) is not content neutral, the analysis turns to whether the statute's compelling government interest is acceptable as a content based regulation.  "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163 (2015). Where a regulation of speech is content based, strict scrutiny applies, meaning the government must show that the regulation is narrowly tailored to serve compelling state interests.  Id.

In interpreting a similar statute to §6349(b) implemented by the State of Colorado,[3] the United States District Court for the District of Colorado found that strict scrutiny applied.  Peck v. McCann, 2021 WL 927639, at *16 (D. Colo. Mar. 11, 2021).  In applying the strict scrutiny test, the Peck Court found that the state's interest in protecting against public disclosure of child abuse reports and records

---

[3] That statute reads, in pertinent part: "Any person who improperly releases or who willfully permits or encourages the release of data or information contained in the records and reports of child abuse or neglect to persons not permitted access to such information by this section or by section 19-1-303 commits a class 1 misdemeanor and shall be punished as provided in section 18-1.3-501, C.R.S."  Colo. Rev. Stat. Ann. §19-1-307(4).

lent itself to a compelling government interest.  Id., citing Pennsylvania v. Ritchie, 480 U.S. 39, 60 (1987)(acknowledging the Commonwealth's "compelling interest in protecting its child-abuse information").  The Ritchie Court was tasked with determining whether certain information contained in a state child welfare organization's records was to be released to a criminal defendant.  480 U.S. at 60.  Ultimately, the court determined that limiting defense counsel to an *in camera* review of the information only was appropriate, noting the expectation for witnesses, victims, and reporters of an assurance of confidentiality.

The continuing effort to protect the confidentiality of these records is due in part to the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §5101, et seq., provides federal funding for such purposes.  In compliance with CAPTA, states that receive grants must certify that they

> [have] in effect and [are] operating a statewide program, relating to child abuse and neglect that includes
> […]
> (viii) *methods to preserve the confidentiality of all records* in order to protect the rights of the child and of the child's parents or guardians, including requirements ensuring that reports and records made and maintained pursuant to the purposes of this subchapter and subchapter III shall only be made available to--
>
>> (I) individuals who are the subject of the report;
>>
>> (II) Federal, State, or local government entities, or any agent of such entities, as described in clause (ix);
>>
>> (III) child abuse citizen review panels;

(IV) child fatality review panels;

(V) a grand jury or court, upon a finding that information in the record is necessary for the determination of an issue before the court or grand jury; and

(VI) other entities or classes of individuals statutorily authorized by the State to receive such information pursuant to a legitimate State purpose;

42 U. S. C. §5106a(b)(2)(B) (Emphasis added).

In fact, a review of the statutes for other states reveals a total of 43, including Pennsylvania and Colorado, which impose criminal penalties for violations[4] of confidentiality requirements and do not limit liability based upon the releasing party.[5]  As recently as May 5, 2021, Pennsylvania was authorized to receive

---

[4] Essentially, this Plaintiff is asking this Court to determine that all of these statutes are not constitutional.  At a minimum, any opinion and order by this Court determining that Pennsylvania's statute does not pass constitutional muster would, at a minimum, undermine forty-three other state statutes.

[5] See Ala. Code § 26-14-8(c), (h)("Any violation"); Alaska Stat. §§ 47.10.093(a), (n)("A person who discloses"), 47.17.040(b)("A person not acting in accordance"); Ariz. Rev. Stat. § 8-807(A), (K), (L), (P), (W)("A person who violates"); Ark. Code § 12-18-909(a), 12-18-205("A person commits"); Cal. Penal Code § 11167.5("Any violation"); Conn. Gen. Stat. §§ 17a-28; 17a-101k(a)("Any violation"); Del. Code tit. 16, §§ 906(c)(2), 914("Whoever violates"); Fla. Stat. §§ 39.202(1), (8), 39.205(6)("A person who"); Ga. Code Ann. §§ 49-5-40(b)-(c), 49-5-41, 49-5-44(a)-(b)("Any person"); Haw. Rev. Stat. § 350-1.4(a)("Any person who"); 325 Ill. Comp. Stat. § 5/11; Iowa Code §§ 235A.15(1), 235A.20, 235A.21(1)("Any person"); Kan. Stat. Ann. § 38-2209(a)-(b)("No individual, association, partnership, corporation, or other entity"); Ky. Rev. Stat. Ann. §§ 620.050(5), 620.990("any person"); La. Children's Code Art. 616.C; La. Stat. Ann. § 46:56(I)("Any person"); Me. Rev. Stat. tit. 22, § 4008(1), (4)("A person"); Md. Code Ann., Fam. Law § 5-707, 5-714; Md. Code Ann., Hum. Servs. § 1-202(a), (e)("A person"); Mass. Gen. Laws ch. 119, §§ 51E("Any person"), 51F("Any person"); Mich. Comp. Laws § 722.633(3)("A person"); Miss. Code Ann. §§ 43-21-257(1), 43-21-261(1), 43-21-267("Any person"); Mo. Rev. Stat. § 210.150.1, .4("Any person"); Mont. Code Ann. § 41-3-205(1)("A person");

$3,573,237 in CAPTA allotments as part of the American Rescue Plan. A true and correct copy of the U.S. Department of Health and Human Services Program Instruction regarding the allotments is attached hereto as Exhibit A.

Employing the same analysis as <u>Peck</u> and in light of the foregoing, it is indisputable that the regulation of speech in 23 Pa. C. S. §6349(b) serves the compelling government interest of protecting the confidentiality of child abuse reports.

To determine whether a regulation is narrowly tailored for purposes of serving a compelling government interest, courts must look to whether the regulation is the least restrictive means "among available, effective alternatives."

---

Neb. Rev. Stat. § 28-725("Permitting, assisting, or encouraging the unauthorized release of any information contained in such reports or records"); Nev. Rev. Stat. § 432B.280("Any person, law enforcement agency or public agency, institution or facility"); N.H. Rev. Stat. Ann. §§ 169-C:35, 169-C:39("Anyone"), 170-G:8-a.("Any person"); N.J. Stat. Ann. § 9:6-8.10a, 10b("Any person"); N.M. Stat. § 32A-4-33(A), (D)("Whoever"); N.Y. Soc. Serv. Law §§ 422(4), (12)("Any person"); N.C. Gen. Stat. § 7B-311(a), (c)(" It is unlawful for any person who is authorized to receive information from the central registry or the responsible individuals list to release that information to an unauthorized person. It is unlawful for any person who is not authorized to receive information from the central registry or the responsible individuals list to access or attempt to access that information."); N.D. Cent. Code §§ 50-25.1-11, 50-25.1-14("Any individual"); Ohio Rev. Code Ann. §§ 2151.421(I), 2151.99("Whoever"); Okla. Stat. Ann. tit. 10A, §§ 1-2-108(D), 1-6-107(A), (D)("Any person"); S.C. Code Ann. § 63-7-1990(A)("A person"); S.D. Codified Laws § 26-8A-13("Any person"); Tenn. Code Ann. § 37-1-409(a)(1), (g)("A violation"); Tex. Fam. Code Ann. § 261.201, Tex. Gov't Code Ann. §§ 552.101, 552.352("A person"); Utah Code Ann. § 62A-4a-412(1), (4)("Any person"); Va. Code Ann. § 63.2-104(A)("any other person to whom any such record or information is disclosed"); W. Va. Code Ann. § 49-5-101(a), (f)("Any person"); Wis. Stat. §48.981(7)(a), (e), (f)("Any person"); Wyo. Stat. Ann. § 14-3-214(a)("Any person").

Ashcroft v. Am. C.L. Union, 542 U.S. 656, 666 (2004).  This is not, however, a

requirement that the regulation be "perfectly tailored."  Williams-Yulee v. Fla. Bar,

575 U.S. 433, 454 (2015)(citations omitted).  Another question to ask when

considering whether a regulation of speech is narrowly tailored is if the regulation

"unnecessarily circumscribe[s] protected expression."  Republican Party of

Minnesota v. White, 536 U.S. 765, 775 (2002)(citation omitted).

　　　　23 Pa. C. S. §6331 contains an all-inclusive list of the information

referenced in §6349(b):

> The Statewide database shall include and shall be limited to the
> following information:
> (1) The names, Social Security numbers, age, race, ethnicity and sex
> of the subjects of the reports.
> (2) The date or dates and the nature and extent of the alleged instances
> that created the need for protective services.
> (3) The home addresses of the subjects of the report.
> (4) The county in which the alleged incidents that created the need for
> protective services occurred.
> (5) Family composition.
> (6) The name and relationship to the child in question and of other
> persons named in the report.
> (7) Factors contributing to the need for protective services.
> (8) The source of the report.
> (9) Services planned or provided.
> (10) If the report alleges child abuse, whether the report was
> determined to be founded, indicated or unfounded.
> (11) If the report alleged the child was in need of general protective
> services, whether the report was valid or invalid.
> (12) If the report was accepted for services and the reasons for the
> acceptance.
> (13) If the report was not accepted for services, the reason the report
> was not accepted and whether the family was referred to other
> community services.

(14) Information obtained by the department in relation to a perpetrator's or school employee's request to release, amend or expunge information retained by the department or the county agency.

(15) The progress of any legal proceedings brought on the basis of the report of suspected child abuse.

(16) Whether a criminal investigation has been undertaken and the result of the investigation and of any criminal prosecution.

(17) In the case of an unfounded or invalid report, if it is later determined that the initial report was a false report, a notation to that effect regarding the status of the report.

(18) Unfounded reports of child abuse, limited to the information authorized under section 6337 (relating to disposition and expunction of unfounded reports and general protective services reports).

(19) Any additional information provided in section 6313(c) (relating to reporting procedure).

(20) Any additional demographic information that the department requires to comply with section 6342 (relating to studies of data in records).

(21) A family case record for each family accepted for investigation, assessment or services which shall be maintained consistent with regulatory requirements.

(22) With respect to cases that are not accepted for child abuse investigation or general protective services assessment or are referred to community services:

    (i) The reason the report was not accepted.

    (ii) Any information provided to the referral source or the family related to other services or option available to address the report.

(23) Any other information that is necessary to maintain the names of persons convicted of a violation under 18 Pa. C.S. § 4906.1 (relating to false reports of child abuse) or the names of persons who made a false report of the need for general protective services.

As listed above, everything in the database is rife with child abuse

information and information which could implicate the rights of children in the

Commonwealth and their parents or guardians.  As the court acknowledged in

Ritchie, there is an expectation of confidentiality when reports are made to child

welfare organizations.  Pennsylvania and, as Defendant has noted, an

overwhelming majority of other states, have responded to this expectation by

criminalizing the unauthorized release of information.

There is not a path to severing what does implicate the rights of children and

their parents or guardians from what does not.  In order to actually protect this

information, any law written with the purpose of doing so must have a deterrent

effect to prevent the release of information; it seems unlikely that civil penalties

would be sufficient for this purpose.  The imposition of job-related consequences

for government employees is also insufficient, given that non-government

employees are also capable of releasing information they obtain.

Plaintiff's factual allegations and the language of her claim contained in

Count I indicate her desire for oversight of CYF in its investigation of the death of

Dante Mullinix.  The legislature contemplated this very need when it mandated the

establishment of citizen review panels.  23 Pa. C. S. §6343.1.  "The panels shall

examine all of the following: (1) Policies, procedures and practices of State and

local agencies and, *where appropriate, specific cases* to evaluate the extent to

which State and local child protective services system agencies are effectively

discharging their child protection responsibilities."  23 Pa. C. S.

§6343.1(b)(emphasis added).  Similarly, 23 Pa. C. S. §6343 provides for

investigations of county agencies by the Commonwealth Department of Human

Services.  Notably, both the Department of Human Services and citizen review panels are granted access to database information.  23 Pa. C. S. §6340(a)(4) and (16).

Clearly, there are other means built into the Commonwealth's child protective services laws for the investigation and oversight of CYF.  Without a doubt, Plaintiff is welcome to question, criticize, and complain about the actions of CYF to anyone who will listen so long as she does not release information contained in the Statewide Database; she is also free to contact local lawmakers and the state government to draw any issues to their attention.  There is nothing restricting Plaintiff's speech on this or any other child abuse matter so long as she does not release information contained in CYF reports.

In light of the foregoing, the prohibition on the unauthorized release of any information promulgated by §6349(b) is the least restrictive means for enforcing the Commonwealth's compelling interest in protecting child abuse information, as set forth in Ritchie, and information which could implicate the rights of children, as contemplated by CAPTA.  Count I of Plaintiff's Complaint should be dismissed because it is legally insufficient and fails to state a claim upon which relief can be granted.

**B. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM PRESENTED IN COUNT II OF THE COMPLAINT BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR A FACIAL CHALLENGE OF 23 Pa. C. S. §6349(b).**

In Count II of Plaintiff's Complaint, she asserts a facial challenge to 23 Pa. C. S. §6349(b), specifically claiming that the statute is overbroad.  Complaint, ¶¶41-42.

The Supreme Court has noted that a facial challenge is the "most difficult challenge to mount successfully," requiring that the plaintiff establish that "no set of circumstances exists under which the Act would be valid."  United States v. Salerno, 481 U.S. 739, 745 (1987).

Though the Supreme Court has not followed this stringent standard exactly in the context of First Amendment challenges, it has nonetheless still required that invalidation for overbreadth requires a showing that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  United States v. Stevens, 559 U.S. 460, 473 (2010).  This is a burden that the plaintiff must carry.  Free Speech Coal., Inc. v. Att'y Gen. United States, 974 F.3d 408, 427 (3d Cir. 2020).

**I.    PLAINTIFF FAILS TO STATE ANY UNDERLYING REASON WHY §6349(b) IS UNCONSTITUTIONAL AND THUS OVERLY BROAD.**

Plaintiff's Complaint contains the bald assertion that §6349(b) is facially unconstitutional simply because it prohibits the release of information by a private

citizen "who has obtained such information, whether lawfully or unlawfully."

Complaint, ¶42. This does not set forth with any clarity the theory under which

§6349(b) is supposed to be unconstitutional. From there, it also fails to even state

that a substantial number of §6349(b)'s applications are unconstitutional. Based

upon this alone, there is no reason to conclude that §6349(b) has any

unconstitutional applications.

Contrarily, there are a large number of cognizable constitutional applications

of §6349(b). In order to analyze a statute for overbreadth, courts must first

construe the statute itself, including a determination of what it covers. Stevens,

559 U.S. at 474. Typically, deference is given to the authority of state courts to

interpret a state law. Id.

There is limited Pennsylvania precedent to aid in the understanding of

§6349(b). In the only meaningful interpretation of the law found by Defendant, the

Superior Court of Pennsylvania held, in a footnote, that "[t]his broad language

extends the duty of confidentiality to all persons who come into possession of

protected information." V.B.T. v. Fam. Servs. of W. Pennsylvania, 705 A.2d

1325, 1334 n.13 (Pa. Super. Ct. 1998). This holding, though not as in-depth as

perhaps desired, does provide guidance as to the scope of the law, acknowledging

that it is both broad and applicable to all persons. Indeed, the aforementioned

statutes of similar nature from around the country contain a similarly broad scope of application.

When lacking further guidance, the Supreme Court has in past cases employed statutory construction principles to interpret statutes. See Stevens; United States v. Williams, 553 U.S. 285 (2008).

The statute in question states, in pertinent part: "A person who willfully *releases or permits the release* of any information contained in the Statewide database or the county agency records required by this chapter to persons or agencies not permitted by this chapter to receive that information commits a misdemeanor of the second degree."  23 Pa. C. S. §6349(b)(emphasis added).

As written, the statute clearly applies to anyone who might come into possession of information contained in the database; the holding in V.B.T. clearly indicates as much.  Where analysis of the statute should then hinge is on the use of the word "release."  Though release is not defined in either the general statutory construction definitions contained in 1 Pa. C. S. §1991 or specific definitions contained in 23 Pa. C. S. §6303, and a search of Pennsylvania state court decisions turns up no relevant results, Merriam-Webster can perhaps provide some guidance as to the word's definition:

> 1: to set free from restraint, confinement, or servitude
> […]
> also : to let go : DISMISS
> […]

2: to relieve from something that confines, burdens, or oppresses
[…]
3: to give up in favor of another : RELINQUISH
[…]
4: to give permission for publication, performance, exhibition, or sale of
also : *to make available to the public*

Merriam Webster Dictionary Online, https://www.merriam-webster.com/dictionary/release (emphasis added).

The construction of the statute and the use of the word release clearly

contemplates those scenarios where the information contained in the report is

unavailable to certain recipients prior to being made available by the offending

actor.  It has already been established herein that the Commonwealth has a

compelling interest—recognized by both the Supreme Court and Congress—in

protecting the information contained in child abuse reports.

It necessarily follows that there are a large number of scenarios in which the

punishment of dissemination of this kind of information is constitutional.  The

plain language of the statute makes clear that its focus is on whether the

recipient(s) of information being released is permitted to receive such information.

Primary in the potential uses of §6349(b) is for the protection of those who

report abuse, including children, from outside harassment.  With an ever-

expanding number of individuals considered mandatory reporters, the statute

provides assurance that confidentiality will be upheld, just as the Ritchie Court

contemplated.  Aside from the names of reporters, victims, and witnesses, the

information contained in the database also includes, among other things, home addresses and Social Security numbers, further compounding the need for strict confidentiality.  Constitutional application of the statute also includes punishment of a child welfare organization employee who releases confidential reports of abuse which may be unfounded, irreparably harming the reputation of an individual who has not been found legally responsible for any act of abuse.  In a scenario where, as here, the releasing party is attempting to place blame on another, the proper venue for doing so is in court and in front of a jury, not in the court of public opinion.

Because Plaintiff is unable to show that a substantial number of §6349(b)'s applications are unconstitutional, there is no reason to conclude that the statute is overly broad.  Plaintiff cannot carry her burden of proof.  Even if she could show some unconstitutionality, there are a myriad of applications of §6349(b) which are constitutional.  This is further evidenced by the sheer number of states that necessarily employ a similarly broad application of this kind of prohibition to protect the confidentiality of child abuse information.  Any finding to the contrary would seriously jeopardize the ability of the states to protect such information. Count II of Plaintiff's Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## II.   §6349(b) IS NOT AN UNLAWFUL PRIOR RESTRAINT ON FREE SPEECH

Assuming *arguendo* from the implications of Plaintiff's assertions that she is claiming §6349(b) is an unlawful prior restraint on free speech, Defendant will examine such an argument herein.

"The term prior restraint is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" Alexander v. United States, 509 U.S. 544, 550 (1993). Based upon this distinction alone, and the number of cases involving prior restraint, it is questionable at best whether §6349(b) can even be considered a prior restraint, let alone an unlawful one.

Where an Oklahoma court enjoined the publication, broadcast, or dissemination of the identity of a child in connection with that child's involvement with juvenile court proceedings, the Supreme Court found that the injunction was an unlawful prior restraint because the trial court failed to close the juvenile proceedings and thus allowed the information to become public. Oklahoma Pub. Co. v. Dist. Ct. In & For Oklahoma Cty., 430 U.S. 308 (1977). Similarly, where a West Virginia statute prohibited the publication of the name of a child involved in juvenile proceedings, but such information was obtained by the press through interviews with eyewitnesses, the Supreme Court once again found that

punishment of the publication was unlawful.  Smith v. Daily Mail Pub. Co., 443 U.S. 97 (1979).

The common thread in those two and other cases is the idea that the information being published was *already available* to the public and thus evaded protection by the states; in this regard, §6349(b) is distinguishable in that punishes only the *release* of information, which in context means information previously unavailable and unauthorized for dissemination to certain recipients.  Simply put, if information is already available to an audience, then logic follows that it cannot be subsequently *released* to that audience.  Once again, there is nothing stopping Plaintiff or any other individual from expressing their thoughts on a CYF investigation, so long as that individual does not release information contained in the database.

§6349(b) is not an unlawful prior restraint as Plaintiff claims.  Plaintiff is unable to show that any number of §6349(b)'s applications are unconstitutional. Once again, even if she were, that number would be outweighed by the significant number of applications that are constitutional and necessary.  As such, Count II of Plaintiff's Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## IV.    CONCLUSION

WHEREFORE, Defendant, David W. Sunday, Jr., respectfully requests that this Honorable Court grant his Motion to Dismiss and dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

SUMMERS NAGY LAW OFFICES

*/s/Sean E. Summers*

By: _____
Sean E. Summers, PA I.D. 92141
35 South Duke Street
York, PA 17401
(717) 812-8100
Fax: (717) 812-8108
E-Mail:
ssummers@summersnagy.com

Dated: October 7, 2021                    *Counsel for Defendant Sunday*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SARAH MERCADO, | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID W. SUNDAY, Jr., | : | |
| DISTRICT ATTORNEY OF YORK | : | CIVIL ACTION NO. 1:21-cv-01631 |
| COUNTY, in his official capacity | : | |
| only, and JOSH SHAPIRO, | : | |
| ATTORNEY GENERALOF | : | |
| PENNSYLVANIA, in his official | : | |
| capacity only | : | |
| *Defendants* | : | |

## CERTIFICATE OF SERVICE

I, Sean E. Summers, Esquire, hereby certify that on this 7th day of October, 2021, a true and correct copy of the foregoing Brief in Support of Motion to Dismiss has been served upon the following parties via First-Class Mail, addressed as follows:

| | |
|---|---|
| Aaron D. Martin, Esquire | Nicole R. DiTomo, Esq. |
| Stephen B. Edwards, Esquire | Pennsylvania Office of the Attorney |
| Mette, Evans & Woodside | General |
| 3401 North Front Street | 1000 Madison Avenue, Suite 310 |
| Harrisburg, PA 17110 | Norristown, PA 19403 |
| *Counsel for Plaintiff* | *Counsel for Defendant Shapiro* |

Respectfully submitted,

SUMMERS NAGY LAW OFFICES

*/s/Sean E. Summers*

By: _____

Sean E. Summers, PA I.D. 92141
35 South Duke Street
York, PA 17401
(717) 812-8100
Fax: (717) 812-8108
E-Mail:
ssummers@summersnagy.com

Dated: October 7, 2021                    *Counsel for Defendant Sunday*