IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARAH MERCADO, | : | Civil No. 1:21-CV-01631 |
| Plaintiff, | : | |
| v. | : | |
| DAVID W. SUNDAY, JR., in his official capacity, and JOSH SHAPIRO, in his official capacity, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is an action seeking injunctive relief filed by Plaintiff Sarah Mercado ("Mercado") against David W. Sunday, Jr., the District Attorney of York County ("Sunday") and Josh Shapiro, the Attorney General of Pennsylvania ("Shapiro"). Before the court are two motions to dismiss filed by Sunday and Shapiro. (Docs. 9, 14.) For the reasons that follow, the motions will be denied. (*Id.*)

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the complaint, on January 3, 2019, Sunday charged Tyree M. Bowie ("Bowie") by criminal information with the murder of Dante Mullinix ("Dante"), a two-year old child.[1] (Doc. 1, ¶¶ 7, 10.) Mercado is Dante's aunt, who believes that Bowie is innocent of Dante's murder and has been publicly advocating against his conviction since these charges were filed. (*Id.* ¶¶ 8, 16.) As

---

[1] The criminal case against Bowie remains pending in the York County Court of Common Pleas at docket number 7558-2018. (Doc. 1, ¶ 9.)

part of her advocacy efforts, Mercado maintains a Facebook group entitled "Justice for Dante" on which she posts her belief that Bowie is innocent, and that the York County Office of Children and Youth Services ("CYS") was the party responsible for failing Dante. (*Id.* ¶ 17.)

During the course of discovery in his criminal case, Bowie received various documents concerning investigations into Dante's death, including documents from CYS. (*Id.* ¶¶ 11, 13.) Before Dante's death, Mercado made a report to CYS expressing concern for Dante's wellbeing. (*Id.* ¶ 12.) Mercado's report, and the documents associated with the investigation stemming therefrom, were part of the documents available to Bowie in his ongoing criminal case. (*Id.* ¶ 13.) After Bowie received these documents, he sent them to Mercado, who posted them to the Justice for Dante Facebook page as additional evidence of CYS's alleged failings surrounding Dante's death. (*Id.* ¶¶ 15, 17.)

On January 26, 2021, after these documents were posted to Mercado's Facebook page, "Sunday charged Mercado . . . with a second-degree misdemeanor under Pennsylvania's Child Protective Services Law." (*Id.* ¶ 18.) These charges against Mercado were ultimately dismissed without prejudice on September 15, 2021. (*Id.* ¶ 21.) Despite the dismissal of these charges, Mercado lacks assurance

that she will not face further prosecution for publication and dissemination of the CYS documents she received from Bowie.[2] (*Id.* ¶¶ 22–23.)

### A. Pennsylvania's Child Protective Services Law ("CPSL")

Mercado has stated that she fears the re-institution of criminal proceedings under Pennsylvania's CPSL. The CPSL was enacted following legislative findings that "[a]bused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment." 23 PA. CONS. STAT. § 6302(a). Thus, the statute's goals were to:

> encourage more complete reporting of suspected child abuse; . . . to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved . . . .

23 PA. CONS. STAT. § 6302(b).

To store reporting information, the CPSL provides for the establishment of "a Statewide database of protective services," which includes eleven categories of information related to reports of child abuse. *See* 23 PA. CONS. STAT. § 6331.

---

[2] The court notes that a protective order has also been entered in the criminal case against Bowie on October 12, 2021, which precludes the "dissemination or distribution of discovery material and/or Confidential Child Protective Services records related to Dante Mullinix and the prosecution of that case." (Doc. 13-1.) This order "specifically notes that the prohibition applies to any individuals in possession of such materials or records and requires that anything previously distributed online must be removed[.]" (*Id.*) The order was directed to be provided to Plaintiff's counsel. (*Id.*)

Within the categories of reports, the Statewide database includes the following information:

(1) The names, Social Security numbers, age, race, ethnicity and sex of the subjects of the reports.

(2) The date or dates and the nature and extent of the alleged instances that created the need for protective services.

(3) The home addresses of the subjects of the report.

(4) The county in which the alleged incidents that created the need for protective services occurred.

(5) Family composition.

(6) The name and relationship to the child in question and of other persons named in the report.

(7) Factors contributing to the need for protective services.

(8) The source of the report.

(9) Services planned or provided.

(10) If the report alleges child abuse, whether the report was determined to be founded, indicated or unfounded.

(11) If the report alleged the child was in need of general protective services, whether the report was valid or invalid.

(12) If the report was accepted for services and the reasons for the acceptance.

(13) If the report was not accepted for services, the reason the report was not accepted and whether the family was referred to other community services.

(14) Information obtained by the department in relation to a perpetrator's or school employee's request to release, amend or expunge information retained by the department or the county agency.

(15) The progress of any legal proceedings brought on the basis of the report of suspected child abuse.

(16) Whether a criminal investigation has been undertaken and the result of the investigation and of any criminal prosecution.

(17) In the case of an unfounded or invalid report, if it is later determined that the initial report was a false report, a notation to that effect regarding the status of the report.

(18) Unfounded reports of child abuse, limited to the information authorized under section 6337 (relating to disposition and expunction of unfounded reports and general protective services reports).

(19) Any additional information provided in section 6313(c) (relating to reporting procedure).

(20) Any additional demographic information that the department requires to comply with section 6342 (relating to studies of data in records).

(21) A family case record for each family accepted for investigation, assessment or services which shall be maintained consistent with regulatory requirements.

(22) With respect to cases that are not accepted for child abuse investigation or general protective services assessment or are referred to community services:

   (i) The reason the report was not accepted.

   (ii) Any information provided to the referral source or the family related to other services or option available to address the report.

(23) Any other information that is necessary to maintain the names of persons convicted of a violation under 18 Pa.C.S. § 4906.1 (relating to

false reports of child abuse) or the names of persons who made a false report of the need for general protective services.

23 PA. CONS. STAT. § 6336. The statute notes that "[n]o information other than that permitted in this subsection shall be retained in the Statewide database." *Id.*

The CPSL further provides for the confidentiality of any information in the Statewide database, and that only certain enumerated individuals and entities are entitled to access this information. 23 PA. CONS. STAT. §§ 6339–40. The statute creates criminal penalties for non-compliance with confidentiality requirements. Specifically, section 6349 states:

> A person who willfully releases or permits the release of any information contained in the Statewide database or the county agency records required by this chapter to persons or agencies not permitted by this chapter to receive that information commits a misdemeanor of the second degree. Law enforcement officials shall insure the confidentiality and security of information under this chapter. A person, including a law enforcement official, who violates the provisions of this subsection shall, in addition to other civil or criminal penalties provided by law, be denied access to the information provided under this chapter.

23 PA. CONS. STAT. § 6349(b).

### B. The Child Abuse Prevention and Treatment Act ("CAPTA") and the CPSL

The confidentiality provisions of the CPSL are due, in part, to the requirements of the Child Abuse Prevention and Treatment Act, 42 U.S.C. § 5101, *et seq.*, ("CAPTA") which provides federal funding for child abuse prevention,

6

assessment, investigation, and treatment activities. 42 U.S.C. § 5116(a)–(b). Funding is contingent upon state certification that:

> [T]he State has in effect and is enforcing a State law, or has in effect and is operating a statewide program, relating to child abuse and neglect that includes . . . methods to preserve the confidentiality of all records in order to protect the rights of the child and the child's parents or guardian, including requirements ensuring that reports and records made and maintained pursuant to the purposes of this Act shall only be made available to [enumerated persons, entities, and agencies].

42 U.S.C. § 5106a(b)(2)(B)(viii). The CPSL reflects Pennsylvania's effort to comply with CAPTA to receive federal funding in support of child abuse deterrence efforts.

On the basis of these facts, Mercado filed the instant complaint on September 22, 2021, alleging that section 6349(b) of the CPSL unconstitutionally infringes on her First Amendment right to free speech and should not be enforced. (Doc. 1, pp. 8–9.)[3] On October 7, 2021, Sunday filed the first of the two instant motions to dismiss accompanied by a supporting brief. (Docs. 9, 10.) Mercado filed a brief in opposition to this motion on October 21, 2021. (Doc. 12.) Sunday timely filed a reply brief. (Doc. 13.) On November 22, 2021, Shapiro filed the instant motion to dismiss accompanied by a supporting brief.[4] (Docs. 14, 15.)

---

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[4] Shapiro sets forth separate grounds to dismiss Mercado's complaint against him, but joins Sunday's motion to dismiss in the event the court is unpersuaded by Shapiro's arguments. (Doc. 14.)

Mercado filed a brief in opposition to the motion on December 8, 2021. (Doc. 18.) Shapiro timely filed a reply brief. (Doc. 19.) Thus, the motions to dismiss are ripe for review.

## STANDARDS OF REVIEW

### A. 12(b)(1) Motion to Dismiss

Shapiro seeks dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The court, in determining whether it has subject-matter jurisdiction, must decide "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (quoting *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994)). Rule 12(b)(1) challenges may be "facial" or "factual." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether jurisdiction has been properly pled and requires the court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891). Conversely, when a defendant sets forth a factual attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. . . . 'no presumptive truthfulness

attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In this case, Shapiro presents a facial attack on jurisdiction. Thus, the court will "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc.*, 220 F.3d at 176 (citing *Mortensen*, 549 F.2d at 891).

**B. 12(b)(6) Motion to Dismiss**

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than

9

conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

**A. Mercado has Standing to Pursue her Claims Against Shapiro.**

Shapiro challenges Mercado's standing, arguing that Mercado cannot establish an actual or imminent harm because events giving rise to one of two avenues by which the Attorney General's office could prosecute Mercado have not occurred. (Doc. 15, p. 6.) Specifically, Shapiro states that:

> The Attorney General has the power to prosecute criminal charges under a limited number of specified cases. 71 P.S. § 732-205(a). Raised in the context of this litigation, the Attorney General shall prosecute criminal charges: (i.) after receiving a referral from a Commonwealth agency arising out of enforcement provisions of a statute charging the agency with a duty to enforce (§ 732-205(a)(6)); or, (ii.) upon a request of a district attorney who lacks the resources to conduct an adequate investigation or where there is a potential for a conflict of interest (§ 732-205(a)(3)). (*See also* Doc. 1 ¶¶ 26, 28). Neither of which have occurred in this action.

(*Id.*) Shapiro argues that by failing to plead the triggering events necessary to vest the Attorney General's office with jurisdiction to prosecute her, Mercado has failed to adequately allege an injury that is fairly traceable to Shapiro's conduct. (*Id.* at 7–9.)

Under Article III of the United States Constitution, federal courts are constrained to resolve only "Cases" and "Controversies." U.S. CONST. art. III, § 2,

cl. 1. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976)). Ensuring a plaintiff has Article III standing "'serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).

      Article III standing requires that the plaintiff, who bears the burden of establishing these elements, prove: (1) an injury-in-fact; (2) that is fairly traceable to the defendant's conduct; and (3) that is likely to be redressed by a favorable decision. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). When standing is challenged at the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). An injury-in-fact must be "'an invasion of a legally protected interest' that is 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). A particularized injury must "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

The Supreme Court has held that "conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III." *Diamond v. Charles*, 476 U.S. 54, 64 (1986). The Court has therefore held that "[w]hen contesting the constitutionality of a criminal statute, 'it is not necessary that [the plaintiff] first expose [herself] to actual arrest or prosecution to be entitled to challenge [the] statute that [she] claims deters the exercise of [her] constitutional rights.'" *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). Instead, "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, [she] 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" *Babbitt*, 442 U.S. at 298 (quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)). However, "'persons having no fears of state prosecution except those that are imaginary or speculative,'" do not satisfy Article III standing requirements. *Id.* (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

In this case, Mercado has alleged an intention to engage in the distribution and publication of information arguably affected with a constitutional interest, but proscribed by section 6349(b) of the CPSL. Specifically, she desires to publish,

republish, distribute, or otherwise share documents concerning Dante that she has posted to the Justice for Dante Facebook page. (Doc. 1.)

Absent from Shapiro's argument is the notion that there is no set of circumstances that would lead to the Attorney General's office re-prosecuting Mercado. To the contrary, Shapiro has confirmed that avenues exist by which Mercado could face re-prosecution from the Attorney General's office. Mercado does not need to await the occurrence of re-prosecution, or even the triggering events for the Attorney General's re-prosecution, before challenging the confidentiality provision of the CPSL. Moreover, in light of Shapiro's failure to assure Mercado that he will refrain from re-prosecuting her, and the fact that her original case was dismissed without prejudice, it is clear that Mercado's fears of re-prosecution are not "'imaginary or speculative[.]'" *Babbitt*, 442 U.S. at 298 (quoting *Younger*, 401 U.S. at 42).

Moreover, to the extent that either Defendant asserts that Mercado lacks standing to challenge the confidentiality provision of the CPSL based on the meaning of the term "release," the court disagrees.

The CPSL's penalty provision states that **<u>anyone</u>** "who willfully releases or permits the release of any information contained in the Statewide database or the county agency records . . . **<u>to persons or agencies not permitted</u>** . . . **<u>to receive that information</u>** commits a misdemeanor of the second degree." 23 PA. CONS.

STAT. § 6349(b) (emphasis added). The statute does not include an exception for information previously released to the public, or even an exception for information that was only previously released to one person. Instead, this provision criminalizes the release of information to individuals not authorized to receive it, regardless of whether they have already received it.

It is undisputed that Mercado is an individual not authorized to receive or release the information at issue under the CPSL. It is further uncontested that Mercado desires and intends to distribute the information at issue to others who are not privileged to receive this information under the CPSL. The fact that Bowie and Mercado have already released the subject information to others is of no moment here. Defendants' implication that Mercado would not be re-prosecuted for distributing information that she has already released is contradicted by their failure to provide her any assurances that they would refrain from re-prosecuting her for such action. Instead, they dismissed her criminal case without prejudice. Moreover, Defendants' failure to prosecute Bowie as the original releasor of the information at issue to Mercado, and their choice to instead prosecute Mercado after she posted the information to Facebook appears to be inconsistent with their interpretation of the term "release."

Accordingly, the court finds that Mercado still faces a credible threat of re-prosecution under the CPSL in the event that she engages in the release of

information previously released on Facebook. Therefore, Mercado does not need to await re-prosecution to initiate her constitutional challenge and has set forth a sufficient injury in fact to proceed.

The court finds that Mercado has also satisfied the elements of traceability and redressability for standing purposes. Indeed, if Mercado were to be re-prosecuted for her speech, it would be due to enforcement by Defendants of section 6349(b) of the CPSL. Were the court to find this provision unconstitutional, Mercado would have no further fear of re-prosecution. Therefore, the court is assured that Mercado has standing to pursue the relief outlined in her complaint.

### B. Defendants' Motion to Dismiss Mercado's As-Applied Challenge Claim Will be Denied.

In this case, Defendants move to dismiss both Mercado's as-applied and facial challenges to section 6349(b) of the CPSL. The court focuses its analysis on the as-applied challenge first.

#### 1. The Statute Presents a Content-Based Restriction on Speech.

"Whenever a plaintiff challenges a speech restriction on First Amendment grounds, the court must determine at the outset whether the restriction is 'content-based' or 'content-neutral.'" *Peck v. McCann*, 525 F. Supp. 3d 1316, 1340 (D. Colo. 2021). As explained by the Supreme Court, "[d]eciding whether a particular regulation is content based or content neutral is not always a simple task."

15

*Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001) (quoting *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 642–43 (1994)).  However, the Court has held that, as a general matter, "laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Id.*  Indeed, communications that are singled out by virtue of the subject matter, rather than the source of the communication are content-based restrictions on speech.  *Id.*  In other words, if a statute restricts speech based on a particular subject matter, it is content-based.  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

The Court has held that this is the case even if the statute "does not discriminate among viewpoints within that subject matter.  For example, a law banning the use of sound trucks for political speech—and only political speech— would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Id.* at 169 (citations omitted).

"Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* (citing *R.A.V. v. St. Paul*, 505 U. S. 377, 395 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U. S. 105, 115, 118 (1991)).  Thus, when a statute is content-based, it must survive strict scrutiny.

16

*Reed*, 576 U.S. at 164.  The Court has noted that a facially content-based speech restriction "is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification or lack of 'animus toward the ideas contained' in the regulated speech."  *Id.* at 165.

In this case, the statute at issue facially distinguishes favored speech from unfavored speech based on whether the speech falls within the enumerated list of documents contained within the statewide database.  Therefore, the statute restricts speech based on a particular subject matter: information contained within the statewide database.  The fact that the statute bans speech regarding all information within the statewide database, regardless of its message, does not alter this conclusion.  The court will therefore apply the strict scrutiny framework to the CPSL.

### 2. The Application of the Strict Scrutiny Standard is Better Suited to a Motion for Summary Judgment.

In order to survive strict scrutiny, the government must prove that the challenged statutory provision is "necessary to serve a compelling state interest and is narrowly drawn to achieve that end."  *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987).  The statute must be the "least restrictive means" for the government to achieve its compelling interest.  *Ashcroft*, 542 U.S. at 666.

At this procedural stage, the court is limited to consideration of the allegations pleaded in Mercado's complaint.  Defendants have not had an

opportunity to allege the compelling state interests at stake here, let alone provide evidentiary support for the proposition that the statute is the "least restrictive means" of achieving the government's compelling interest. Because at this stage Defendants cannot meet their burden, the court will deny the motions to dismiss to allow development of a more fulsome record.

### C. Defendants' Motion to Dismiss Mercado's Facial Challenge Claim Will be Denied.

As the Court of Appeals for the Third Circuit has explained: "[t]here are two main ways to succeed on a facial challenge in the First Amendment context. A plaintiff may demonstrate either that no set of circumstances exists under which the [law] would be valid, i.e., that the law is unconstitutional in all of its applications, or that the law is overbroad because a substantial number of its applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (internal quotation marks and citation omitted). "This is the 'most difficult challenge to mount successfully.'" *Mitchell*, 652 F.3d at 405 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). When assessing a facial challenge, the court considers "a law's constitutionality based on its text alone [without] consider[ing] the facts or circumstances of a particular case." *Marcavage*, 609 F.3d at 273.

In this case, Mercado alleges that the CPSL is overbroad because a substantial number of its applications are unconstitutional. The Third Circuit has

recognized the challenge that the concept of "substantial overbreadth" poses. *Free Speech Coalition, Inc. v. AG of the United States*, 677 F.3d 519, 537 (3d Cir. 2012). Specifically, "the challenge is in determining at what point the invalid applications of the statute become substantial compared to the valid applications." *Id.* In making this determination, courts consider four factors: (1) "the number of valid applications" of the statute; (2) "the historic or likely frequency of conceivably impermissible applications"; (3) "the nature of the activity or conduct sought to be regulated"; and (4) "the nature of the state interest underlying the regulation." *Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d 215, 226 (3d Cir. 2004) (citations and quotation marks omitted); *see also Borden v. Sch. Dist.*, 523 F.3d 153, 165 (3d Cir. 2008).

At this preliminary stage without the benefit of a factual record on which to make these determinations, the court must credit Mercado's assertion that the CPSL "is overly broad in that it facially criminalizes not merely a public employee's disclosure of information otherwise deemed confidential, but also criminalizes a private citizen's publication, republication, distribution and sharing of documents otherwise lawfully in such citizen's possession." (Doc. 1, ¶ 41.) Defendants have not had the opportunity to provide any evidence that would aid the court is making this determination. The court will accordingly deny the motions to dismiss to allow development of a more complete record.

## CONCLUSION

For the foregoing reasons, the motions to dismiss filed by Defendants, Docs. 9, 14, will be denied. An appropriate order will issue.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Court Judge<br>
Middle District of Pennsylvania

Dated: May 17, 2022