**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VICTORIA SCHRADER,<br><br>Plaintiff,<br><br>v.<br><br>DAVID W. SUNDAY, JR., in his official capacity, and MICHELLE HENRY, in her official capacity,[1]<br><br>Defendants. | : | Civil No. 1:21-CV-01559<br><br><br><br><br><br><br><br>Judge Jennifer P. Wilson |
| SARAH MERCADO,<br><br>Plaintiff,<br><br>v.<br><br>DAVID W. SUNDAY, JR., in his official capacity, and MICHELLE HENRY, in her official capacity,<br><br>Defendants. | : | Civil No. 1:21-CV-01631<br><br><br><br><br><br><br><br>Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court are cross motions for summary judgment in two consolidated cases. Plaintiff Victoria Schrader ("Schrader") brought the initial action seeking injunctive relief against David W. Sunday, Jr., the District Attorney of York County (the "District Attorney") and the Attorney General of

[1] Pursuant to Federal Rule of Civil Procedure 25(d), when a public officer, being sued in his public capacity, ceases to hold office, his successor is automatically substituted as a party. Fed. R. Civ. P. 25. Therefore, in these cases, Michelle Henry, Attorney General of Pennsylvania, has been substituted as the defendant for Josh Shapiro, former Attorney General of Pennsylvania.

Pennsylvania (the "Attorney General") (collectively "Defendants"). (*Schrader*, Doc. 1.) Schrader brought as applied and facial challenges against a state law prohibiting the release of information regarding child abuse information, arguing that the law violates the First Amendment. Schrader sought to permanently enjoin Defendants from enforcing the law. (*Id.*) Plaintiff Sarah Mercado ("Mercado") brought a similar action for injunctive relief against Defendants. (*Mercado*, Doc. 1.) Eventually, Plaintiffs settled with the District Attorney and stipulated that their claims against him would be dismissed with prejudice. Meanwhile, Plaintiffs moved for summary judgment and a permanent injunction to prevent the Attorney General enforcing the law at issue. Defendants filed a cross-motion for summary judgement. For the reasons that follow, the court will dismiss Plaintiffs as-applied challenges as moot, stay their facial challenges, and deny the motions for summary judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

The consolidated cases before the court are two of three civil actions that arose from the dissemination of information obtained through discovery in a criminal case. The criminal case was brought against Tyree Bowie ("Bowie") for

[2] This section of this memorandum includes only the background relevant to the resolution of the motions for summary judgment. Any additional factual recitation that is necessary is included in the Discussion section of this memorandum. In considering the instant motions, the court relied on the uncontested facts except as otherwise noted.

the death of Dante Mullinix ("Mullinix"). (*Schrader*, Doc. 1, ¶ 7; Doc. 74, ¶ 1; *Mercado*, Doc. 44, ¶ 1; Doc. 53, ¶ 1.)[3] The Pennsylvania Attorney General's Office did not participate in this prosecution of this criminal case. (Doc. 65, ¶ 2.)

Through the course of his criminal prosecution, Bowie received in discovery certain documents (the "Documents") from a protected statewide database regarding suspected child abuse. (*Id.* ¶ 3.) Bowie shared the documents with Mullinix's aunt, Mercado, who posted them publicly on Facebook. (*Id.* ¶¶ 4–5.)

As a result of the Facebook posting, the District Attorney charged Mercado with a second-degree violation of 23 Pa. Cons. Stat. § 6349(b) of the Pennsylvania Child Protective Services Law ("CPSL") for publicly releasing protected child abuse documents. (*Id.* ¶ 8.) The charges were subsequently dismissed without prejudice. (*Id.* ¶ 9.) The Pennsylvania Attorney General's Office did not participate in this criminal prosecution. (*Id.* ¶ 10.)

Schrader, Mullinix's grandmother, and Mercado wish to share the Documents. (*Id.* ¶¶ 6–7.) As a result, Schrader and Mercado brought the instant lawsuits. They challenge the "confidentiality mandate" of § 6349(b) both facially and as applied to them, arguing that the law unconstitutionally violates their First

---

[3] The criminal case against Bowie was brought in the York County Court of Common Pleas at docket number 7558-2018.

In this memorandum, unless otherwise noted, the court's citations to litigation documents refer to documents in the *Schrader* case, Civil No. 1:21-CV-01559.

Amendment rights. (*Schrader*, Doc. 1; *Mercado*, Doc. 1.) As relief, they seek a permanent injunction to prevent their criminal prosecution for "publishing, republishing, distributing or otherwise sharing the [] Documents with third parties, whether publicly or privately." (Doc. 1, p. 10.)[4] Schrader also seeks a preliminary injunction to enjoin Defendants from prosecuting her under § 6349(b). (Doc. 9.)

On May 16, 2022, the court granted Schrader's motion for preliminary injunction and enjoined Defendants from criminally prosecuting her. (Doc. 34.) The District Attorney appealed the preliminary injunction. (Doc. 38.) The Third Circuit found that this court "did not abuse its discretion by granting the preliminary injunction as far as it lets Schrader publish the Facebook documents." (Doc. 57-2, p. 14.) But the Circuit found that, beyond the Documents already in Schrader's possession, Schrader had no standing regarding documents not yet in her possession. (*Id.* at 5–8.) Accordingly, on August 10, 2023, the Circuit issued its mandate. (Doc. 57-2.) The Circuit vacated the preliminary injunction and remanded, instructing this court to narrow the preliminary injunction so that it applies only to the Documents. (*Id.* at 15.) The court did so. (Doc. 58.)

Meanwhile, on March 31, 2023, this court granted Defendants' motion to consolidate the instant cases for purposes of summary judgment. (*Schrader*, Doc. 55; *Mercado*, Doc. 37.) On October 13, 2023, the Attorney General filed a motion

[4] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

for summary judgment and supporting documents. (*Schrader*, Docs. 63–66; *Mercado*, Doc. 42–45.) Plaintiffs filed a motion for summary judgment and supporting documents on October 17, 2023. (*Schrader*, Docs. 68–70; *Mercado*, Docs. 47–49.) The Attorney General and Plaintiffs docketed responsive filings, and Plaintiffs filed a reply. (*Schrader*, Docs. 74–78; *Mercado*, Docs. 53–57.)

On October 24, 2023, the court approved a stipulated order permanently enjoining the District Attorney from prosecuting Plaintiffs for "publishing, republishing, distributing, or otherwise sharing" the Documents. (*Schrader*, Doc. 71; *Mercado*, Doc. 50.) The order dismissed Plaintiffs' claims against the District Attorney with prejudice and approved a settlement with the District.

**STANDARD OF REVIEW**

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v.*

*Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or

suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## Discussion

The parties have no material factual disputes. Rather, they argue about the legal consequences of the undisputed facts. In their motions, Plaintiffs argue that they are entitled to summary judgment against the Attorney General. The Attorney General, on the other hand, argues that no case or controversy exists between her and Plaintiffs with respect to the as applied claims. Even if there were a controversy, the Attorney General argues that the claims would be barred by Eleventh Amendment immunity. Finally, regarding the facial challenges, the Attorney General argues that the court should abstain from interpreting the CPSL.

(Doc. 64, pp. 17–20 (citing *R.R. Comm'n of Texas v. Pullman*, 312 U.S. 496, 501 (1941)).)

**A. Plaintiffs' lack standing to bring their as-applied challenges because the claims have become moot.**

As the Supreme Court has stated, "an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013)). Although this court previously found that Plaintiffs had standing to bring their claims, the Attorney General argues that their as-applied claims are now moot. She points to three reasons to conclude these claims are moot. First, by statute she has no independent power to criminally prosecute. She has the power to do so only in statutorily-specified instances. Second, only two of these specified instances might have reasonably occurred in this case. One is now foreclosed, and there is no indication that the other is reasonably likely to occur. Third, even if the Attorney General were empowered to criminally prosecute Schrader or Mercado, their dissemination of the Documents would not violate the CPSL.

Pennsylvania statute provides the Attorney General the authority to prosecute criminal cases in eight delineated instances. 71 Pa. Stat. § 732-205(a). In the case at bar, only two instances are relevant. The Attorney General has the power to prosecute criminal cases upon the "request of a district attorney who

lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that there is the potential for an actual or apparent conflict of interest on the part of the district attorney or his office." § 205(a)(3). She may also prosecute criminal "charges investigated by and referred to [her] by a Commonwealth agency arising out of enforcement provisions of the statute charging the agency with a duty to enforce its provision." § 205(a)(6). Here, the Pennsylvania Department of Human Services is the Commonwealth agency obligated under the CPSL to protect the confidentiality of information in the Statewide Database. (Doc. 1, ¶ 28; Doc. 78, p. 14.)

The Attorney General argues that her § 205(a)(3) powers are foreclosed in this instance by Plaintiffs' settlement with the District Attorney. (Doc. 76, pp. 3, 5.) And, she argues, there is no evidence in the record to suggest that the Department of Human Services would refer the issue to her. (*Id.*; Doc. 64, p. 17.)

Under Third Circuit precedent, once a court has found that standing exists, a plaintiff need not keep showing its existence. *Hartnett v. Pa. St. Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020). Thereafter, if a defendant "claims that some development has mooted the case, it bears "the heavy burden of persuading the court that there is no longer a live controversy." *Id.* at 305–06 (cleaned up). But a "case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends*

*of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). When an action has become moot, the court must dismiss it. *Hartnett*, 963 F.3d at 304.

Here, the plain language of § 205(a) establishes that the Attorney General has no independent source of authority to bring criminal charges for violations of the CPSL. The relevant District Attorney is permanently enjoined from bringing charges against Defendants related to the Documents. Therefore, no charges could be reasonably expected by means of § 205(a)(3). And there is no indication of a referral from the Department of Human Services under § 205(a)(6).

Plaintiffs argue that courts have found standing based on a credible threat of prosecution when the government refuses to disavow enforcement of a regulation. (Doc. 78, pp. 12–13 (citing *Greenberg v. Lehocky*, 81 F.4th 376, 386 (3d Cir. 2023), *petition for cert. filed*, No. 23-833 (Feb. 2, 2024)).) And Plaintiffs argue that this case is similar to *Stilp v. Contino*, in which this court and the Third Circuit affirmed a preliminary injunction against the Attorney General, who had neither prosecuted nor threatened prosecution. (*Id.* at 11–12 (citing 629 F. Supp. 2d 449 (M.D. Pa. 2009), 613 F.3d 405 (3d Cir. 2010), *on remand*, 743 F. Supp. 2d 460 (M.D. Pa. 2010)).) In that case, a Commonwealth agency investigated plaintiff's conduct, notified him that he may be subject to criminal penalties, and ultimately fined plaintiff for violating state ethics law. 629 F. Supp. 2d at 456. The

commission had not yet referred the case to the Attorney General for prosecution. Nonetheless, the Third Circuit found it proper for the trial court to have enjoined the Attorney General, and on remand the district court entered a permanent injunction. 743 F. Supp. at 472.

Here, unlike in *Stilp*, no Commonwealth agency has taken action against Plaintiffs let alone referred the matter to the Attorney General. Nor have Plaintiffs alleged, let alone shown, a history or practice of the Department of Human services referring such matters to the Attorney General for prosecution. And the District Attorney is permanently enjoined from prosecuting Plaintiffs for disseminating the Documents, which eliminates that potential referral source to the Attorney General.

In bringing their as-applied claims, Plaintiffs challenge the Attorney General's possible prosecution of Plaintiffs. But, at this point, that prosecution can occur only if three requirements are met. First, the Department of Human Services must find that Plaintiffs violated the CPSL. Second, the Department of Human Services must make a referral to the Attorney General requesting that she prosecute Plaintiffs. Third, the Attorney General must agree with that referral and bring a criminal prosecution.[5] Each of these requirements are conceivable. But

---

[5] The Attorney General's office has represented that Schrader and Mercado would not violate the CPSL by publicly or privately disseminating the Documents. In essence, her office asserts that it would not prosecute Plaintiffs if they engage in the desired conduct. At the motion to dismiss stage, the Attorney General made no such representation. Had she done so, perhaps the claims against her would have been dismissed for lack of standing. Her subsequent change in position,

they do not rise to the likelihood of reasonably expected, because there is no record of them happening in this case or any other similar situation. As with *Greenberg*, on which Plaintiffs rely (although that case addressed standing), Plaintiffs claims against the Attorney General rely on a "highly attenuated chain of possibilities." 81 F.4th at 387 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)).[6]

In light of these circumstances, the court finds that the Attorney General could not reasonably be expected to prosecute Plaintiffs for disseminating the Documents. As a result, the court finds that Plaintiffs' as-applied claims are moot. Therefore, the court will dismiss the as-applied claims brought against the Attorney General.[7]

---

attesting that Plaintiffs' desired conduct does not violate the CPSL, amounts to a voluntary cessation. In this memorandum, the court does not hinge its mootness analysis on the Attorney General's representation. Rather, the court looks more broadly at whether a reasonable expectation exists that the Attorney General would prosecute Plaintiffs.

[6] Plaintiffs raise two additional arguments regarding mootness. They argue that, under *Peachlum*, there is a relaxed requirement for standing in cases challenging First Amendment limitations. (Doc. 75, pp. 13–14 (citing *Peachlum v. City of York*, 333 F.3d 429, 435 (3d Cir. 2003).) This case is inapposite as it deals with ripeness rather than mootness. Next, relying on another case that addressed ripeness rather than mootness, Plaintiffs argue that their claims meet the Third Circuit's requirements for declaratory judgment. (*Id.* at 14 (citing *Step-Saver Data Sys., Inc. v. Wyse Tech*, 912 F.2d 643 (3d Cir. 1990)).) Plaintiffs also argue that they have standing with respect to their facial challenge to the CPSL. (*Id.* at 14–17.) But the Attorney General only raises her mootness argument with respect to Plaintiffs' as-applied challenge.

[7] Because the court finds the as-applied challenges are moot, this memorandum does not address the Attorney General's Eleventh Amendment argument.

**B. The court will abstain from construing the CPSL.**

In their complaints, Plaintiffs argue that § 6349(b) is "overly broad in that it facially criminalizes not merely a public employee's disclosure of information otherwise deemed confidential, but also criminalizes a private citizens' publication, republication, distribution and sharing of documents otherwise in such citizen's possession, whether lawfully or unlawfully." (*Schrader*, Doc. 1, ¶ 41; *Mercado*, Doc. 1, ¶ 41.)

Plaintiffs ask the court to find § 6349(b) facially unconstitutional. (*Schrader*, Doc. 68-3, ¶ 3; *Mercado*, Doc. 47-3, ¶ 3.) They urge the court to permanently enjoin the Attorney General from criminally prosecuting any private citizen under § 6349(b) "for publishing, republishing, distributing, or otherwise sharing, any documents or information, whether publicly or privately, deemed confidential under the CPSL." (Doc. 68-3, ¶ 3.)

Section 6349(b) reads as follows in full:

> **(b) Unauthorized release of information.--**A person who willfully releases or permits the release of any information contained in the Statewide database or the county agency records required by this chapter to persons or agencies not permitted by this chapter to receive that information commits a misdemeanor of the second degree. Law enforcement officials shall insure the confidentiality and security of information under this chapter. A person, including a law enforcement official, who violates the provisions of this subsection shall, in addition to other civil or criminal penalties provided by law, be denied access to the information provided under this chapter.

Plaintiffs argue that § 6349(b) allows for the criminal prosecution of "any secondary recipient of such information." (Doc. 75, p. 20 (citing *V.B.T. v. Family Servs. of W. Pa.*, 705 A.2d 1325, 1334 n.13 (Pa. Super. Ct. 1998)).) They argue that, even if such information has already been made public, § 6349(b) allows for the criminal prosecution of anyone who shares it.[8] (*Id.* at 22.)

The Attorney General asserts that such secondary publication of information would not constitute a "release" under § 6349(b). Rather, she argues that a "release" can only occur once. (Doc. 64, p. 12.) As such, § 6349(b) would not allow for the prosecution of secondary or tertiary recipients of information. It would only apply to persons making the initial release. The Attorney General further points out that the Pennsylvania Supreme Court has not interpreted this question regarding the scope of § 6349(b) and whether it is constitutional. (*Id.* at 19.)

Although federal courts are bound to adjudicate controversies properly before them, abstention is appropriate under certain circumstances. *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 630 (3d Cir. 1991) (citation omitted). Abstention may be justified to avoid "needless friction with state policies" when

[8] The footnote in *V.B.T.* which Plaintiffs cite does not on its face support this proposition. That case did not concern the dissemination of information which had already been released. Rather, it made clear that § 6349(b) applied to employees of Family Services and foster parents. 702 A.2d at 1334 n.13.

the court is presented with "a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question." *Id.* at 631 (quoting in part *R.R. Comm'n of Tex. v. Pullman*, 312 U.S. 496, 500 (1941)).

*Pullman* abstention should only rarely be invoked. *Planned Parenthood of Central N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000). But, under the doctrine, a federal court may exercise its discretion whether to abstain if three "exceptional circumstances" are present. *Id.* at 149–50. First, "uncertain issues of state law underlying the federal constitutional claims." *Id.* at 149 (citation omitted). Second, the state law issues are "amenable to a state court interpretation which could 'obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim.'" *Id.* at 149–50 (citation omitted). Third, "an erroneous construction of state law by the federal court would disrupt important state policies." *Id.* at 150 (citation omitted).

Here, the first *Pullman* factor is met. Plaintiffs have brought federal constitutional claims in federal court. These claims are based on a portion of § 6349(b) which is facially ambiguous. The statute undoubtedly allows the criminal prosecution of any person who willfully releases "information contained in the Statewide database or the county agency records required by this chapter." § 6349(b). But the ambiguity arises because the meaning of "release" is open to

multiple interpretations. It could, as Plaintiffs argue, apply to anyone who shares information contained in the Statewide database regardless of whether such information has already been made public. Or it could be, as the Attorney General argues, an event that can only happen once. Information contained in the Statewide database could be like the proverbial cat: once out of the bag, it cannot again be released. In the context of § 6349(b), the meaning of release is an uncertain issue of state law statutory interpretation underlying Plaintiffs' federal constitutional claims.

The second *Pullman* factor is also met. Plaintiffs' facial challenge to § 6349(b) rests on their interpretation of the statute. Were the Pennsylvania Supreme Court to adopt a narrower interpretation, such as the Attorney General's, it would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claim.

The third *Pullman* factor is likewise met. The state "generally has a 'compelling interest in protecting its child-abuse information.'" *Schrader v. Dist. Attorney of York Cty.*, 74 F.4th 120, 127 (3d Cir. 2023) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987)). If this court adjudicated Plaintiffs' facial challenge, there is a possibility that the court would adopt Plaintiffs' reading of § 6349(b) and find that the statute is facially unconstitutional. The court could thereby enjoin the Attorney General from all enforcement of § 6349(b). Later, the

Pennsylvania Supreme Court might adopt a narrower interpretation of the statute. If this narrower interpretation rendered the statute constitutional, this court's erroneous construction of the statute, and related injunction, would have disrupted the state's important interest in protecting child abuse information. Thus, all three *Pullman* factors are present.

As the Third Circuit has held, "absent significant reasons to the contrary, abstention is generally proper once it [has been] ascertained that the threshold 'special circumstances' have been fulfilled." *Chez Sez*, 945 F. 2d at 633 (citation omitted). Plaintiffs do not argue the existence of significant reasons, or equitable considerations, to avoid abstention. Rather, they double down on their argument regarding *V.B.T.*[9] (Doc. 78, pp. 19–22.)

Because the requirements for *Pullman* abstention are present, the court will exercise its discretion to abstain. As the Supreme Court has stated, *Pullman* abstention "does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise; it serves the policy of comity inherent in the doctrine of abstention; and it spares the federal courts of unnecessary constitutional

[9] Plaintiffs also argue that, in asserting her current interpretation of § 6349(b), the Attorney General has reversed course. (Doc. 57, pp. 21–23.) They argue that the Attorney General's prior position, that Mercado could be prosecuted under § 6349(b), conflicts with her current position. (*Id.*) They further argue that her prior position aligns with *V.B.T.* and shows that the statute is unambiguous, broad in its application, and unconstitutional. The court is not convinced by Plaintiffs' analysis of *V.B.T.* The state courts may agree with Plaintiffs, but at the moment, this issue of state law remains ambiguous. The court does not find that Plaintiffs' argument impacts the *Pullman* factors. Nor does it present a significant reason not to abstain.

adjudication." *Harrison v. Nat'l Ass'n for the Adv. of Colored People*, 360 U.S. 167, 177, 179 (1959) (instructing trial court to retain jurisdiction and afford appellees reasonable opportunity to bring appropriate state court proceedings). The Supreme Court instructs that "[i]t is better practice, in a case raising a federal constitutional or statutory claim (where the doctrine of abstention is applied), to retain jurisdiction, rather than to dismiss." *Am. Trial Lawyers Ass'n v. N.J. Sup. Ct.*, 409 U.S. 467, 469 n.4 (1973) (citation omitted). Therefore, the court will stay Plaintiffs' facial claims.

**CONCLUSION**

For the reasons provided above, the court will dismiss Plaintiffs' remaining as applied claims and stay their facial claims. An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: June 24, 2024